RICHARD J. GLAIR
1183 QUEEN ANNE
LOS ANGELES, CA. 90019



FILED
CLERK, U.S. DISTRICT COURT
APR 24 2015
CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LA CV15 3079 R RNB

Case No.: CV15-

Richard J. Glair,

    Plaintiff,

vs.

The City of Los Angeles, Charles Beck, John Incontro, Robert A. Lopez, Robert McCarty, Kelly Sandel, Johnathan Pultz, John Doe 1, John Doe 2, John Doe 3

    Defendants

COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS UNDER 42 U.S.C 1983 AND RELATED STATUTES.

REQUEST FOR JURY TRIAL

"physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." United States v. United States District Court 407 U.S. 297,313.

PREFACE

This case is directly related to case No. Cv13-08946-DDP-(JCGx). Plaintiff brings this related case since it is not clear if Rule 15 as to amending cases applies,

PAID
APR 24 2015
Clerk, US District Court

1

because California's two year statue of limitation has not passed and because of actions of defendants and their attorneys in said related case in concealing the names of the active participants in the Fourth Amendment violation. (as described under the statement of facts concerning defendant McCarty.)

Defendants attorneys, particular a E.L. Greenwood, have refused to disclose the names of the active participants, actively mislead plaintiff as to the names of the participants and even today, after being shown a U.S. Supreme Court case directly on point, refuse to provide two other names. Ms. Greenwood has stated to plaintiff that, after 18 years of prosecuting misdemeanors that she only recently has been assigned to civil rights cases and is not familiar with many of their aspects so perhaps the obstructionism is also due to other attorneys listed in the related case.

## SUMMARY OF CASE

Defendants Sandel and Pultz and Does 1 and 2, with two assault rifles pointed directly at Plaintiff's head, forced their way into plaintiff's kitchen in the middle of of the night claiming they "just wanted to look around." Defendant City in the related case claims said defendants " looking" for a fleeing suspect. The suspect was a 15 year Hispanic, weighing approximately 150 pounds, according to police reports. Plaintiff is almost four times the age of the suspect, almost 100 pounds heavier and no claim has ever been made that plaintiff had any connection with the suspect. Further, not the least bit of evidence connected the suspect with plaintiff's home and, in fact, the invading defendants willfully ignored the complete lack of connection between plaintiff, plaintiff's home and the suspect have fled over four hours earlier.

## STATEMENT OF JURISDICTION

The Court has jurisdiction under 28 U.S.C 1331 and 1343.

2

## STATEMENT OF FACTS

PLAINTIFF ALLEGES THE FOLLOWING:

a.

1. Plaintiff is a 60 year Caucasian male, with long brown hair, no criminal record, no warrants outstanding now or at the time of the incident who, when confronted by the invading defendants was wearing glasses, in his shorts, in the kitchen of his home, with lights on in the home, with said home having five large windows (through which the entire first floor apartment could be seen). It was so quiet in the home that not one of plaintiff's two dogs barked when invading defendants open a latched gate to plaintiff's yard, walked by said windows and then began banging at plaintiff's back door. One of the two dogs was a two year old cattle dog that still barks at everything. Plaintiff was reading a book in the living room. Prior to invading defendants banging at kitchen door plaintiff had said to himself "I'm glad I am safe from those police with their guns in here and that tank they have going up and down the street."

2. Plaintiff has worked as a public school teacher and in the investment securities business. Plaintiff's mother was a school teacher and his father long time employee of the Veterans Administration. Plaintiff has three sisters, two of whom have worked for the government, one as a nurse ,psychologist with the same Veterans Administration.

3. Plaintiff graduated in the top 10% of his   high school.
Plaintiff also graduated from the undergraduate division of Columbia University . This division includes alumni such as the President, his Attorney general, President G.W. Bush's last attorney general, the 2012

Nobel Prize winner in chemistry, the founder of the CIA(who also graduated from plaintiff's high school)and other well known figures such as Lionel Trilling, Benjamnin Cardozo, Alan Ginsberg, Jack Keruoac and Alexander Hamilton.

4. Plaintiff has never owned or fired a gun but respects an individual's Second Amendment rights. Plaintiff's hobbies are reading,playing golf and riding his bicycle.

5. When Plaintiff took a copy of the claim he filed with the defendant city to the local police station, a Sgt. Hanke stated, "you certainly don't look like the suspect."

b.

6. The suspect defendants were pursuing was a approximately 15-17 year Hispanic who weighed approximately 150 pounds.

7. At approximately 6:00p.m. on May 1,2013, the suspect jumped a fence on the western border of the four unit apartment complex plaintiff lives.

8. After jumping the fence the defendant city's police force(LAPD) saw the suspect run north .

9. Prior to the suspect running north, the LAPD fired 7-8 shots at suspect's back. Those shots all went down plaintiff's driveway. One landed in the second floor of an elementary school at end of plaintiff's driveway. The mother next to plaintiff's unit was screaming for her 11 year old and 5 year old to come inside as the shots were fired.

4

10. Almost immediately the area was surrounded by police: on motorcycle, on foot and shortly thereafter two helicopters and a command center. The command center for the entire operation was in the yard where the suspect began his climb over the fence. No one was allowed to enter or exit the streets. Officers were everywhere in that yard.

11. According to U.S. Census data the surrounding area has 483 residents.

12. On the street in front of plaintiff's address were numerous large street lamps in front of the school.

13. There were lights on in three of the four units of plaintiff's apartment complex.

14. During the entire time at issue LAPD members sat at the unit adjacent to plaintiff's on the west. Plaintiff spoke to the officers at least twice between approximately 6:15p.m. and 10:00p.m. Those officers saw plaintiff walking up and down his driveway numerous times. Those officers walked by plaintiff's open front door numerous times. Other officers walked by plaintiff's opened front door numerous times. In fact, plaintiff saw defendant McCarty walk up and speak to the officers, he was wearing a dark windbreaker.

15. The suspect was never seen or reported by anyone to be either in or about plaintiff's unit or any of the adjacent units on the north, south, east or west after he jumped the fence and ran away. In the approximately 143 page incident report of complied by the defendants *no report of the suspect being on plaintiff's property or the adjacent property exist. No information in those reports states that any evidence found concerning the suspect was found on plaintiff's property.*

c.

16. At approximately 10:00pm plaintiff's seven year old dog barked. Plaintiff looked out his front

5

door and saw numerous members of an assault rifle armed LAPD unit coming up plaintiff's driveway. Plaintiff had previously seen these individuals in the backyard of the house bordering on plaintiff's north and they had seen plaintiff and just looked away after seeing plaintiff. This unit had a dog with it. A member of said unit( who plaintiff now believes is Sandell but could be Pultz) came to plaintiff's front door, looked directly in Plaintiff's house and at plaintiff and said "keep your dog quiet,we want to look around." The front door had a perforated metal screen on it, through which the entire house was visible. The lights were on in the house. The bedroom was also visible since it is parallel to the front door on the west.

17. Plaintiff never signaled in any way that he was in danger and patted dog on head to keep him quiet. The LAPD member never asked or indicated anything about plaintiff or inside of house.

18. After speaking with officer plaintiff went back to kitchen and then to living room.

19. The officer walked away to the unit on the west.

20. The officer came right up to the front door, there was nothing on the front steps. Indeed, Plaintiff had been walking in and out the front door all night.

d.

21. To the right of plaintiff's front door is a latched gate that leads to the back yard. That gate is always closed so the dogs do get out. If one walks through the gate there are three large windows, measuring 4 feet high by 2 and half feet wide. The entire unit is visible from these windows. The windows are brand new, the screens only unlatch from the inside of the house. None of those windows or screens were damaged. The screen is very difficult to remove from the outside because the surrounding frame hangs over the screen.

6

21. A few minutes after the officer left plaintiff heard a pounding at the back door. The person pounding never identified himself but just kept saying "open the door", over and over in a screaming voice. Plaintiff was petrified and did not know what to do.

22. Finally, the person said, "it's the police, open the door."

23. Plaintiff immediately said he lived there alone and no one else was there. The pounding and yelling continued.

24. Finally, through the kitchen window plaintiff saw the police helmet so he gingerly opened the door.

25. Plaintiff was then confronted with two high powered rifles aimed right at his head. One officer had his finger on the trigger and his cheek on the butt of the gun as if he was about to fire. He kept that position as he walked up the stairs to the kitchen and demanded entry and kept yelling he wanted to look around. He was extremely hostile to plaintiff, as if plaintiff had done something wrong. He indicated no concern about plaintiff or if anyone was in apartment. He kept saying "I'm not going to shoot you."

26. Plaintiff told him over and over he could not come inside, Plaintiff specifically said "I don't consent to your coming in, you can't come in."

27. Since said defendant would not leave the door still, plaintiff simply picked up the dog and moved away. When plaintiff was forced out of the house, he saw two more LAPD member(Does 1,2) in the backyard. They had a dog, that dog had never barked any time it was in the unit or on the four unit complex.

28. Sandell and Pultz walked through the house.

7

29. If there had been someone who screamed or yelled it is highly likely that someone would have been killed by Sandell or Pultz. If there had been a hostage in the house(for which there was no evidence at all) the confrontational manner in which defendants entered would have, again, had not only the suspect but innocent people dead. If there had been a hostage, the house would have been surrounded, not stormed.

30. On leaving, one of the two defendants thrust his shoulders aggressively at plaintiff as if to say "I went in, too bad about you and your house and your fucking 4th amendment rights, what are you going to do about it, do you want to fight?" as dangerous as this might (or perhaps not) seem.

31. The suspect was finally captured later when the dog barking revealed where the suspect was even though the suspect had showered and changed clothes.

32. No other house within approximately 30 houses adjacent to plaintiff's was searched.

33. Plaintiff had numerous attempts to obtain representation but in every case the attorneys said "you have a good case, but we need a physical injury, otherwise the city will not settle."

CAUSES OF ACTIONS

PLAINTIFF REALLEGES AND REINCORPORATES THE ABOVE FACTS AND ALLEGES FOLLOWING CAUSES OF ACTION PURSUANT TO FEDERAL LAW:

    A.    PURSUANT TO FEDERAL LAW AGAINST SANDELL, PULTZ AND JOHN DOES 1-2:

1. Violation of plaintiff's right to be free from illegal search and seizure as caused by entering of plaintiff's home, which includes the backyard.

2. John Does 1, 2 failing to intervene to protect plaintiff's from the further intrusion of Sandell and Pultz.

3. Defendants Sandell and Pultz use of unreasonable force in a high degree by pointing high powered rifles at plaintiff's head and continuing to point said rifles in the circumstances described.

4. Defendants entering plaintiff's home in retaliation for plaintiff's exercising his 1st amendment right to criticize a police officer.

5. Defendants violated plaintiff's right to equal protection under the law in entering plaintiff's house alone when 29 other homes equally could have been searched under the "class of one" doctrine. See Village of Willowbrook v. Olech, 528 U.S. 562.

6. Defendants Sandell, Pultz and Does 1, 2 did conspire to violate plaintiff's Right to equal protection under the law as follows:

    1. No evidence existed that suspect was in plaintiff's home
    2. Defendants knew no evidence existed.
    3. Defendants knew no evidence existed to enter any of the other 29 homes in the area yet conspired to enter plaintiff's home alone despite their being no reason to enter the home.

B. PURSUANT TO FEDERAL LAW AGAINST JOHN DOE 3

John doe 3 was the supervisor of defendants Sandell,Pultz and Does 1,2. Doe 3 was present on the scene. Does 3 specifically told the officers that 4th amendment protections were not too be considered in apprehending the suspect in the circumstances and that said direction caused the illegal entry of plaintiff's home.

C. PURSUANT TO FEDRAL LAW AGAINST DEFENDANTS MCCARTY AND SANDELL, PULTZ,DOES 1,2

1. Said defendants did conspire to violate plaintiff's rights under the 4th amendment as follows:

McCarty did conceal the names of the arresting officers in his arrest report (which was the only arrest report)to insulate defendants from any potential liability, further that defendants Sandell,Pultz, Does 1,2 did conspire to ignore the lack of evidence allowing entry on plaintiff's property, ignore the conditions on the property, ignore plaintiff's refusal to allow entry, ignore the lack of the dogs not barking or not "alerting" on anything on plaintiff's property ,ignore the presence of the officers on the property adjacent to plaintiff's with the specific purpose of conspiring to deny plaintiff his 4th amendment rights and 1st amendment rights.

D. DEFENDANTS INCONTRO, LOPEZ,BECK AND THE CITY OF LOS ANGELES HAVE VIOLATED FEDERAL LAW AS FOLLOWS:

1. By failing to train as to basic 4th amendment protections .

2. *By admitting in the related case that they provide no training.*

3. By being deliberately indifferent to the training of LAPD members as to 1st and 4th amendment rights.

CLAIMS FOR RELIEF

10

1. Plaintiff requests punitive damages against defendants McCarty, Sandell,Pultz,Does 1,2,3 in that McCarty's concealing of the names of the defendants, Supervisor Doe 3 ordering defendant to disregard 4th amendment protections and the actions of Sandell, Pultz, and Does 1,2 should also be punished by punitive damages for the purpose of deterrence and retribution for the exacerbated degree of wrongdoing and to prevent such wrongdoing against a person's home, in the middle of the night, *against an admitted non suspect, while ignoring the complete lack of evidence for the illegal entry as much as this court or any jury may not believe, at this point, that such are the facts.*

2. General compensatory damages under 42 U.S.C 1983 and the relevant conspiracy Statutes.

Richard J. Glair

April 22, 2015.

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself [X] )

Richard J. Glair

**DEFENDANTS** ( Check box if you are representing yourself [ ] )

**(b) County of Residence of First Listed Plaintiff** Los Angeles
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**County of Residence of First Listed Defendant** _____
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c) Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

1183 Queen Anne
Los Angeles, Ca. 90019
(no phone)

**Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- [ ] 1. U.S. Government Plaintiff
- [X] 3. Federal Question (U.S. Government Not a Party)
- [ ] 2. U.S. Government Defendant
- [ ] 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [X] 1 | Incorporated or Principal Place of Business in this State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. ORIGIN** (Place an X in one box only.)

- [X] 1. Original Proceeding
- [ ] 2. Removed from State Court
- [ ] 3. Remanded from Appellate Court
- [ ] 4. Reinstated or Reopened
- [ ] 5. Transferred from Another District (Specify)
- [ ] 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** [X] Yes [ ] No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** [ ] Yes [X] No     [ ] **MONEY DEMANDED IN COMPLAINT:** $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
42 U.S.C. 1983-violation of 4th amendment, conspiracy, violation of 1st amendment

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| [ ] 375 False Claims Act | [ ] 110 Insurance | [ ] 240 Torts to Land | [ ] 462 Naturalization Application | **Habeas Corpus:** | [ ] 820 Copyrights |
| [ ] 400 State Reapportionment | [ ] 120 Marine | [ ] 245 Tort Product Liability | [ ] 465 Other Immigration Actions | [ ] 463 Alien Detainee | [ ] 830 Patent |
| [ ] 410 Antitrust | [ ] 130 Miller Act | [ ] 290 All Other Real Property | | [ ] 510 Motions to Vacate Sentence | [ ] 840 Trademark |
| [ ] 430 Banks and Banking | [ ] 140 Negotiable Instrument | **TORTS** | **TORTS** | [ ] 530 General | **SOCIAL SECURITY** |
| [ ] 450 Commerce/ICC Rates/Etc. | [ ] 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | [ ] 535 Death Penalty | [ ] 861 HIA (1395ff) |
| [ ] 460 Deportation | | [ ] 310 Airplane | [ ] 370 Other Fraud | **Other:** | [ ] 862 Black Lung (923) |
| [ ] 470 Racketeer Influenced & Corrupt Org. | | [ ] 315 Airplane Product Liability | [ ] 371 Truth in Lending | [ ] 540 Mandamus/Other | [ ] 863 DIWC/DIWW (405 (g)) |
| [ ] 480 Consumer Credit | [ ] 151 Medicare Act | [ ] 320 Assault, Libel & Slander | [ ] 380 Other Personal Property Damage | [ ] 550 Civil Rights | [ ] 864 SSID Title XVI |
| [ ] 490 Cable/Sat TV | [ ] 152 Recovery of Defaulted Student Loan (Excl. Vet.) | [ ] 330 Fed. Employers' Liability | [ ] 385 Property Damage Product Liability | [ ] 555 Prison Condition | [ ] 865 RSI (405 (g)) |
| [ ] 850 Securities/Commodities/Exchange | | [ ] 340 Marine | **BANKRUPTCY** | [ ] 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| [ ] 890 Other Statutory Actions | [ ] 153 Recovery of Overpayment of Vet. Benefits | [ ] 345 Marine Product Liability | [ ] 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | [ ] 870 Taxes (U.S. Plaintiff or Defendant) |
| [ ] 891 Agricultural Acts | [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle | [ ] 423 Withdrawal 28 USC 157 | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 871 IRS-Third Party 26 USC 7609 |
| [ ] 893 Environmental Matters | [ ] 190 Other Contract | [ ] 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | [ ] 690 Other | |
| [ ] 895 Freedom of Info. Act | [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury | [X] 440 Other Civil Rights | **LABOR** | |
| [ ] 896 Arbitration | [ ] 196 Franchise | [ ] 362 Personal Injury-Med Malpratice | [ ] 441 Voting | [ ] 710 Fair Labor Standards Act | |
| [ ] 899 Admin. Procedures Act/Review of Appeal of Agency Decision | **REAL PROPERTY** | [ ] 365 Personal Injury-Product Liability | [ ] 442 Employment | [ ] 720 Labor/Mgmt. Relations | |
| | [ ] 210 Land Condemnation | [ ] 367 Health Care/Pharmaceutical Personal Injury Product Liability | [ ] 443 Housing/Accommodations | [ ] 740 Railway Labor Act | |
| [ ] 950 Constitutionality of State Statutes | [ ] 220 Foreclosure | | [ ] 445 American with Disabilities-Employment | [ ] 751 Family and Medical Leave Act | |
| | [ ] 230 Rent Lease & Ejectment | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 446 American with Disabilities-Other | [ ] 790 Other Labor Litigation | |
| | | | [ ] 448 Education | [ ] 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number: **CV15 3079**

CV-71 (10/14)     CIVIL COVER SHEET     Page 1 of 3

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court?<br>☐ Yes  ☒ No<br><br>If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action?<br>☐ Yes  ☒ No<br><br>If "no," skip to Question C. If "yes," answer Question B.1, at right. | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| | | ☐ NO. Continue to Question B.2. |
| | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action?<br>☐ Yes  ☒ No<br><br>If "no," skip to Question D. If "yes," answer Question C.1, at right. | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| | | ☐ NO. Continue to Question C.2. |
| | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |

| D.1. Is there at least one answer in Column A?<br>☐ Yes  ☒ No<br>If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION.<br>Enter "Southern" in response to Question E, below, and continue from there.<br>If "no," go to question D2 to the right. ➡ | D.2. Is there at least one answer in Column B?<br>☐ Yes  ☒ No<br>If "yes," your case will initially be assigned to the<br>EASTERN DIVISION.<br>Enter "Eastern" in response to Question E, below.<br>If "no," your case will be assigned to the WESTERN DIVISION. ⬇<br>Enter "Western" in response to Question E, below. |
|---|---|

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | WESTERN |

| QUESTION F: Northern Counties? | | |
|---|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes | ☒ No |

CV-71 (10/14)            CIVIL COVER SHEET            Page 2 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court**?   ☒ NO   ☒ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court**?
☐ NO   ☒ YES

If yes, list case number(s):   CV 13-08946-DDP-(JCGx)- Glair v. City of Los Angeles, et al.,

**Civil cases** are related when they (check all that apply):

☒ A. Arise from the same or a closely related transaction, happening, or event;

☒ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☒ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note: That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** _[signature]_    DATE:   April 24, 2015

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
| --- | --- | --- |
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |